IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERI D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 4999 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Teri D. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

**BACKGROUND**

Plaintiff protectively filed for DIB on April 27, 2017, alleging disability since January 30, 2017 due to: arthritis in the hands, hips, knees, and ankles; Type 2 diabetes; neuropathy in the feet and nerve damage; plantar fasciitis in the left foot;

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

anxiety/depression; a back injury with herniated and bulging discs; blurred vision; a 10-pound lifting limitation; an inability to sit for long periods; and difficulty walking. (R. 13, 186, 226). Born in 1962, Plaintiff was 54 years old as of the alleged disability onset date making her a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d). She subsequently changed age categories to a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(e). Plaintiff graduated from college and lives in a townhouse with her husband. (R. 42-43, 227). Her work history dates back to November 1997 when she served as a problem manager for a tech company for 5 years. She then worked as a marketing director for a mortgage company before taking a part-time job as an executive assistant to an accountant in November 2009. Beginning in May 2011, Plaintiff also served as a communications manager for a non-profit organization. (R. 228). She was let go on January 30, 2017 as a result of outsourcing and received unemployment insurance. (R. 46, 196-97, 227). Plaintiff believes the real reason for her termination was her ongoing limitations, time away from work for medical appointments, an inability to lift over 10 pounds or be on her feet for long periods, and an inability to work evening events or put in 12 to 14 hour days. (R. 227).

    The Social Security Administration denied Plaintiff's application initially on July 17, 2017, and again upon reconsideration on October 25, 2017. (R. 60-86). She filed a timely request for a hearing and appeared before administrative law judge Janice M. Bruning (the "ALJ") on June 19, 2019. (R. 39). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Kenneth C. Browde (the "VE"). (R. 41-59). On August 8, 2019, the ALJ found that Plaintiff's diabetes mellitus with neuropathy, plantar fasciitis, hip disorder, spinal disorder, hypertension with a cerebral

2

vascular accident event (stroke), and obesity are severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-21). After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with certain postural limitations. She also needs a sit-stand option that allows her to stand for 1 to 2 minutes after sitting for 30 minutes, and must be allowed to use a cane as needed to get to and from a workstation. (R. 21-31).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC can perform Plaintiff's past relevant work as a communications manager, office manager, administrative assistant, and marketing director, and so found Plaintiff not disabled at any time from the January 30, 2017 alleged disability onset date through the date of the decision. (R. 31). The Appeals Council denied Plaintiff's request for review on June 22, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); *Payne v. Colvin*, 216 F. Supp. 3d 876, 880 (N.D. Ill. 2016).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to seek expert review of significant medical evidence in determining her RFC; (2) improperly omitted mental limitations from the RFC; and (3) erred in evaluating her subjective statements regarding the limiting effects of her symptoms. As discussed below, this Court finds that the case must be remanded for further consideration of Plaintiff's physical and mental functioning following her stroke.

## **DISCUSSION**

A.     **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act (the "SSA"). *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB under the SSA, a claimant must establish that she is disabled within the meaning of the Act.  *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016).  A person is disabled if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F.Supp.2d 618, 630 (N.D. Ill. 2009).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing "whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."  *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520).  If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Id*.

**C.     Analysis**

    **1.     RFC**

Plaintiff argues that the case must be reversed or remanded because in determining her RFC, the ALJ improperly interpreted the significance of an October 16, 2017 EMG/nerve conduction study and her January 2018 stroke without medical input.  A claimant's RFC is the maximum work that she can perform despite any limitations.  20

5

C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 404.1527(f)(2). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022).

      The ALJ found Plaintiff capable of sedentary work involving: no climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, crouching, kneeling, crawling, bending, and twisting. Plaintiff also needs a sit-stand option allowing her to stand for 1 to 2 minutes after sitting for 30 minutes, and she must be allowed to use a cane as needed to get to and from a workstation. (R. 21). In reaching this conclusion, the ALJ discounted the July 3, 2017 and October 19, 2017 opinions from state agency consultants Vidya Madala, M.D., and Prasad Kareti, M.D., who both determined that Plaintiff is capable of medium work with frequent climbing of ramps, stairs, ladders, ropes, and scaffolds, and frequent stooping, kneeling, crouching, and crawling. (R. 67-68, 81-82). The ALJ explained that the opinions were not fully persuasive because Drs. Madala and Kareti "did not have the opportunity to see the entire record, including that regarding [Plaintiff's] stroke event in January 2018." (R. 28). This lack of a longitudinal view of the record is also true of the state agency psychological consultants Terry Tavis, M.D., and Gayle Williamson, Psy.D., who determined on June 30, 2017 and October 9, 2017,

6

respectively, that Plaintiff has a mild limitation in concentration, persistence, or pace. (R. 65, 79).

Plaintiff's treating internist, Candice R. Robb Rarey, D.O., provided an opinion on September 6, 2018 that expressly considered Plaintiff's functioning in light of her stroke, polyneuropathy, and neuropathic pain. (R. 505). According to Dr. Robb Rarey, Plaintiff can: walk one block; sit for 45 minutes at a time; stand for 10 minutes at a time; stand/walk for less than 2 hours total; sit for about 2 hours total; and rarely lift less than 10 pounds. (R. 505-06). Plaintiff also needs to walk around every 15 minutes for 4 minutes, and will take unscheduled breaks hourly for an unknown amount of time due to muscle aches, chronic fatigue, adverse effects of medication, and neuropathy. (R. 506). Dr. Robb Rarey indicated that Plaintiff will have good days and bad days, and will miss more than 4 days of work per month. (R. 507).

The ALJ found that Dr. Robb Rarey's opinion had little persuasive value because Plaintiff showed "significant improvement" within 12 months. (R. 30). This resulted in the ALJ determining Plaintiff's RFC without the benefit of a medical assessment of her work-related functioning after the stroke. *See McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017) ("Once the ALJ discounted [the] opinions [of record], she was left with an evidentiary record that did not support her RFC determination."). The Court finds this problematic because the record contains evidence of ongoing limitations. In April 2018, neuroradiologist Avi Mazumdar, M.D., noted residual symptoms from the stroke, including fatigue, difficulty with short-term memory, involuntary muscle twitching in the left hand, and constant neuropathy pain in the legs. (R. 1392, 1396). Some of these symptoms persisted during a follow-up appointment with Dr. Mazumdar on

7

November 27, 2018, including continued impairment in cognition and memory. (R. 1420, 1423). And in December 2018, Plaintiff reported multiple falls at home and complained of strength, standing, balance, and gait deficits. (R. 1939, 1941, 2205).

On January 9, 2019, Plaintiff told neurologist Gutti Padmaja, M.D., that she experiences shooting pains, numbness, burning, and tingling in her feet that wakes her up in the middle of the night. She also complained of left leg pain from lumbar radiculopathy and balance problems. (R. 1438). Physical therapy records from February 2019 indicate that pain interfered with Plaintiff's activity and movement "[a]ll of the time," and she was slightly disoriented with limited focus, limited reasoning, and impaired judgment. (R. 2226, 2228). The therapy notes further recorded deficits in balance, cadence, hip stability, initiating gait, posture, step length and width, stopping, and turning. (R. 2229). During a follow-up appointment with Dr. Padmaja on March 12, 2019, Plaintiff again reported fatigue, back pain, weakness, numbness, and depression. On exam, she exhibited decreased pinprick sensation up to her knees, decreased vibratory sensation in the right big toe, and decreased temperature sensation in the toes. (R. 1738-39).

The Commissioner denies that the ALJ made an RFC determination without updated medical input following Plaintiff's stroke, noting that on June 13, 2018, state agency consultant Karen Sarpolis, M.D., opined that Plaintiff is capable of medium work as stated by Drs. Madala and Kareti. (Doc. 23, at 5) (citing R. 500). As a preliminary matter, the ALJ did not discuss Dr. Sarpolis' opinion in her decision or rely on her conclusions. Even if she had, moreover, Dr. Sarpolis nowhere mentions that Plaintiff suffered a stroke, so it is not at all clear that she considered this significant event in assessing the RFC. (R. 500). Dr. Sarpolis likewise made no reference to the abnormal

October 16, 2017 EMG/nerve conduction study showing peripheral polyneuropathy in both lower extremities with evidence of active denervation in the distally located muscles and axonal loss. (R. 400-01). There is a similar problem with the Psychiatric Review Technique that state agency consultant Hillel Raclaw, Ph.D., completed on June 11, 2018. His notes say nothing about Plaintiff's stroke and instead focus entirely on records from November 2016 to June 2017. (R. 499). In such circumstances, the mere fact that the ALJ found Plaintiff "more limited than the state agency consultants" (Doc. 23, at 6) (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)), does not establish that the RFC properly accounts for all of Plaintiff's post-stroke limitations.

Also concerning is the ALJ's conclusion that despite having mild limitations in concentration, persistence, or pace, and in understanding, remembering, and applying information (R. 16), Plaintiff is capable of performing her past relevant work without any mental restrictions. (R. 31). All of Plaintiff's past work was skilled, and courts have found that "the inclusion of even mild limitations in . . . concentration, persistence, or pace may preclude the ability to perform such skilled . . . work." *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019). The ALJ did not acknowledge this issue or adequately explain why Plaintiff is unrestricted in her ability to perform skilled work.

Finally, the ALJ needs to better explain how she established the contours of the sit-stand option. Plaintiff testified that she can sit for 30 minutes at a time, but it is not clear how the ALJ determined that Plaintiff only needs a 1 to 2 minute break in between. The state agency consultants imposed no sit-stand requirement at all, and Dr. Robb Rarey opined that Plaintiff needs to walk around for 4 minutes every 15 minutes and will

9

take unscheduled breaks each hour. (R. 506). The Commissioner stresses that Plaintiff "never indicated [that she] was unable to return to sitting for another 30 minutes after standing for two minutes" (Doc. 23, at 6), but neither did she testify that she could. On remand, the ALJ should better articulate the basis for the sit-stand limitation in light of the medical and opinion evidence of record. *See, e.g., Joanne F. v. Berryhill*, 370 F. Supp. 3d 935, 939 (N.D. Ill. 2019) ("[I]n the Seventh Circuit, the ALJ . . . has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings.").

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review all aspects of Plaintiff's RFC and reconsider her subjective statements regarding her symptoms.

### CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the case is granted and the Commissioner's Motion for Summary Judgment [22] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: April 5, 2023

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge